**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>CHAISSON MICHAEL RODRIGUEZ,<br><br>　　　　　Defendant. | 2:10-CR-235 JCM (PAL) |
|---|---|

**ORDER**

Presently before the court is the government's objection (doc. #41) to Magistrate Judge Leen's order and report of findings and recommendation (doc. #40) on defendant's motion to suppress (doc. #20) and defendant's motion for discovery (doc. #30), to which the defendant has responded (doc. #45). Also before the court is defendant Chaisson Michael Rodriguez's objection (doc. #42) to the report and recommendation, to which the government has responded (doc. #44).

Under Local Rule IB 1-4 and 28 U.S.C. § 636(b)(1), a magistrate judge shall file findings and recommendations for disposition by the district judge. The district judge "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. . . ." 28 U.S.C. § 636(b)(1). Where the recommendation from the magistrate judge concerns a nondispositve matter, "[t]he district judge must consider timely objections or modify or set aside any part of the order that is contrary to law or clearly erroneous." FED. R. CRIM. P. 59(a).

In the instant matter, Judge Leen recommends that the defendant's motion to suppress be granted as to evidence uncovered pursuant to the drug trafficking clause in the search warrant and

**James C. Mahan**
**U.S. District Judge**

that it be denied in all other respects. (Doc. #40). Both parties have submitted objections to that report. However, Judge Leen did not make findings or issue a recommendation on the supplemental *Miranda* suppression issue submitted by the defendant (doc. #38), which is disputed by the government (doc. #39). Accordingly, that issue is newly addressed below.

**I.     Government's Objection**

In the motion to suppress, the defendant asserted that there was no probable cause for the officers to search for evidence of marijuana ingestion or distribution. Judge Leen agreed:

> Rodriguez is not charged with narcotics-related offenses, and there is nothing in the record to suggest the government intends to introduce any evidence of marijuana use or sales in the case. From the police reports attached as exhibits to the Motion to Suppress, it appears that police seized three Dell computers and three marijuana smoking pipes. *See* Incident Report of Detective R. Adams, attached as Exhibit C to Defendant's Motion to Suppress at 6. The court agrees that the warrant does not state probable cause to believe Rodriguez was trafficking in marijuana. There is nothing at all in the four corners of the warrant or its supporting affidavit to indicate that Rodriguez might be engaged in the sale of narcotics.

(Doc. #40, p. 22–23). Finding the warrant and supporting affidavit deficient of probable cause as they applied to drug trafficking evidence, Judge Leen recommended applying the severance doctrine per *United States v. Sears*, 411 F.3d 1124, 1129 (9th Cir. 2005), to suppress the fruits of that specific search–namely, the seized Dell computers.

Although the government objects to this recommendation, it agrees with Judge Leen's findings as they relate to the drug trafficking portion of the search warrant. The government concedes that the authorities lacked probable cause to search for drug trafficking evidence and, accordingly, that the computers are inadmissible as evidence of such. Instead, the government contends that the computers "were actually seized by ATF Special Agents and the ARMOR (bomb squad) Unit specifically for evidence pertaining to the manufacture of explosive devices and weapons and *not* for any evidence regarding drug trafficking." (Doc. #41, p. 2) (emphasis in original). The government also submits that this evidence was not revealed at the evidentiary hearing "because it was unforseen that the Magistrate Judge would interpret the language of the State search warrant to encompass the subsequent federal seizure of the laptop computers." *Id.*

The defendant responds that the computers could not have been seized pursuant to the portion

James C. Mahan
U.S. District Judge

- 2 -

1  of the warrant dealing with explosive devices, which reads: "Any and all explosive devices, books, tools or components used to manufacture explosive devices." (Doc. #20-1, ex. E). The Dell computers do not fit into any of the listed categories. Rather, the only portion of the warrant supporting their seizure deals with drug-trafficking, and the government admits that portion was lacking in probable cause.

The court agrees with the defendant and Judge Leen that the seized laptops are neither explosive devices, books, tools, or components used to manufacture explosive devices. Rather, the laptops were most likely seized pursuant to the drug trafficking portion of the warrant, which includes "recorded information and any computerized device capable of storing information." (Doc. #20-1, ex. E). Accordingly, the admissibility of the computers depends on the viability of the government's alternative theory, the inevitable discovery doctrine.

"The inevitable discovery doctrine is an exception to the exclusionary rule." *U.S. v. Andrade*, 784 F.2d 1413, 1433 (9th Cir. 1986). Pursuant to this theory, "[i]f the prosecution can establish by a preponderance of the evidence that the information ultimately or inevitably would have been discovered by lawful means[,] . . . then . . . the evidence should be received. *Nix v. Williams*, 467 U.S. 431, 443 (1984). However, the government must establish this likelihood of discovery by a preponderance of the evidence, *U.S. v. Lopez-Soto*, 205 F.3d 1101, 1106–07 (9th Cir. 2000), citing "circumstances other than those disclosed by the illegal search itself," *U.S. v. Polanco*, 93 F.3d 555, 562 (9th Cir. 1996).

The government has met this burden here. "The probable cause for the search of the laptop computers was based on *inter alia*, information indicating that the Defendant had purchased hobby fuze (which is used in the manufacture and detonation of explosive devices) off of the internet, and that agents found computer printouts pertaining to the manufacture of explosives and chemical and biological weapons inside of the Defendant's residence." (Doc. #41, p. 2). The discovery of these printouts, which constitute facts other than those disclosed by the illegal search itself, established probable cause for the May 27, 2010, warrant. This warrant would have inevitably uncovered the previously-seized Dell computers.

1  Accordingly, the computers shall be admitted as evidence pertaining to the manufacture of
2  explosive devices and weapons, but not as evidence regarding drug trafficking.

3  **II.     Defendant's Objections**

4  In the motion to suppress, the defendant argued: (1) that the officers unreasonably seized him
5  in violation of his Fourth Amendment rights; (2) that the seizure escalated into a de facto arrest
6  unsupported by probable cause; and (3) that the officers conducted an illegal, overly broad, and
7  unnecessary protective sweep of his home. The defendant also argued that the search warrant and
8  supporting affidavit in this case were unsupported by probable cause, lacked particularity, and were
9  so facially invalid that no officer could have reasonably relied on them. Thus, the defendant argues
10 that evidence seized from his home should be suppressed as it was either the fruit of the officer's
11 initial, illegal conduct, or because the search warrant was invalid.

12 Each of these concerns is addressed in the report and recommendation. With regard to the
13 defendant's initial encounter with the officers, the magistrate judge found: (1) the defendant had
14 been seized for Fourth Amendment purposes during his initial contact with law enforcement; (2) no
15 de facto arrest ever occurred; (3) the ensuing protective sweep of the premises was supported by
16 specific, articulable facts creating a reasonable belief that other potentially dangerous persons could
17 have been present in the home; and (4) the protective sweep was properly executed and limited in
18 scope to determine whether such a person was in fact present in the home.

19 With regard to the search warrant, the magistrate judge found: (1) the warrant did not state
20 probable cause to believe the defendant was trafficking in marijuana, and items connected with drug
21 trafficking should therefore be suppressed (e.g., the seized Dell computers); (2) the good faith
22 exception applies to the remainder of the warrant; and (3) the firearm portion of the warrant meets
23 the particularity requirement.

24 The defendant responds with several factual objections noted on pages six and seven of his
25 filing (doc. #42). However, merely listing facts to which he objects absent an explanation of how
26 these findings are erroneous is insufficient. *See* FED. R. CRIM. P. 59(a) (stating that the district judge
27 may modify the report and recommendation where the objecting party shows that the findings are
28

**James C. Mahan**
**U.S. District Judge**

- 4 -

clearly erroneous or contrary to the law). Accordingly, the court defers to the credibility determinations made by the magistrate judge and adopts the report and recommendation's factual summary in ruling on the defendant's following legal objections.

      A.      Unreasonable Seizure and De Facto Arrest

The defendant agrees with the magistrate judge's conclusion that a Fourth Amendment seizure occurred during his encounter with law enforcement, but he maintains that this seizure was unreasonable and evolved into a de facto arrest. The government contends, and the magistrate judge agreed, that the initial contact between the defendant and the authorities was instead an investigatory detention for which reasonable suspicion existed to detain and question the defendant.

"A person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *U.S. v. Mendenhall*, 446 U.S. 544, 554 (1980). However, different levels of seizure exist for purposes of this analysis. For example, "a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possible criminal behavior even though there was no probable cause to make an arrest." *Adams v. Williams*, 407 U.S. 143, 145–47 (1972) (internal citations omitted). This kind of investigatory detention must be supported by a reasonable suspicion that criminal activity is afoot. *U.S. v. Arvizu*, 534 U.S. 266, 273 (2002).

Once reasonable suspicion exists, an officer may frisk the individual for weapons where the officer has reason to believe that he or she is dealing with an armed and dangerous person. *Terry v. Ohio*, 392 U.S. 1 (1968). In making this determination, the Ninth Circuit has acknowledged that sudden movements or repeated attempts to reach for an object that is not immediately visible may be sufficient. *U.S. v. Flatter*, 456 F.3d 1154, 1157 (9th Cir. 2006).

However, considering the totality of the circumstances, an investigatory detention may be converted into a full-fledged arrest requiring probable cause. In the Ninth Circuit the ultimate inquiry is whether a reasonable person would believe himself to be under arrest, focusing on whether the police had their guns drawn, whether the defendant was handcuffed, whether the defendant's liberty

1  was restricted, and the number of officers present. *Wash. v. Lambert*, 98 F.3d 1181, 1185 (9th Cir.
2  1996).

3         In this case, the defendant was grabbed by the arm, handcuffed, and escorted to a patrol
4  vehicle. The court agrees with the magistrate judge that a Fourth Amendment seizure clearly
5  occurred under these circumstances. However, the court also agrees with the magistrate judge that
6  no arrest occurred, and detention was reasonable under the Fourth Amendment. Based upon (1) the
7  defendant's prior history of carrying a concealed weapon and robbery, which was known to the
8  officer at the time of the detention, (2) the nature of the call, and (3) the defendant's behavior,
9  reasonable suspicion existed to detain and pat down the defendant. The court also agrees with the
10 magistrate judge's finding that the stop was reasonable, in that it lasted no longer than necessary to
11 question the defendant about the shooting and to conduct a protective sweep of the residence.

12        Considering the totality of the circumstances, the events in question can be properly
13 characterized as an investigatory detention. Accordingly, the court finds the defendant's objection
14 to the magistrate judge's findings on this issue without merit.

15     B.    <u>Protective Sweep</u>

16 The magistrate judge concluded that the officers were justified in conducting a protective
17 sweep of the residence to determine whether other dangerous persons were present. The defendant
18 maintains that there were no exigent circumstances to justify the sweep and that it was overly broad.

19     i.    *Reasonableness of the Protective Sweep*

20        Warrantless searches of homes are presumptively unreasonable. *Groh v. Ramirez*, 540 U.S.
21 551, 559 (2004). Accordingly, the government bears the burden of showing that such a search meets
22 the exigent circumstances exception to the warrant requirement. *U.S. v. Delgadillo-Vasquez*, 856
23 F.2d 1292, 1298 (1998); *see Md. v. Buie*, 494 U.S. 325, 334 (1990) (holding that a protective sweep
24 of a residence without a warrant can only be justified through the exigent circumstances exception).
25 Police may conduct such searches for protection from surprise attack. The search is "not a full search
26 of the premises, but may extend only to a cursory inspection of those spaces where a person may be
27 found," *Buie*, 494 U.S. at 1099, and it may last only as long as necessary to dispel the reasonable
28

**James C. Mahan**
**U.S. District Judge**

- 6 -

suspicion of danger. *Id.*

Here, the defendant argues that no exigent circumstances existed to conduct the search. The defendant admitted that he, not his "twin brother," shot the pellet gun before the officers began the search. The defendant also disputes the statements made by his mother upon which the magistrate judge relied, because they were not contained in the police report. Finally, the defendant argues that the camera bag was closed, and not in plain view when the officer entered the bedroom. Accordingly, the defendant urges the court to suppress that evidence.

The court finds these objections without merit and agrees with the magistrate judge that it was objectively reasonable for the police to conduct a limited sweep of the premises. As the magistrate judge noted in the report and recommendation:

> Here, HPD officers had specific and articulable facts supporting the belief that other persons posing a potential danger to them may be in the home. Both Rodriguez and McKenna made conflicting statements about whether anyone else was in the home, and McKenna's demeanor changed when she was questioned on the matter. Rodriguez initially stated to both Officer VanBeveren and Officer Sage that his twin brother had shot the BB/pellet gun before he confessed he did it. He also stated that his best friend might be in the house. McKenna initially denied knowing whether anyone else was in the house then stated that her boyfriend might be in the home. When VanBeveren asked whether anyone else was in the home, McKenna hesitated and looked over her shoulder to the stairway. Officers speaking to McKenna heard a "rustling noise" in the house which McKenna said were her dogs. McKenna said her son often had sleepovers, and she did not know if any of his friends were there. Sage testified McKenna's demeanor changed, and she became visibly nervous, sweating on her upper lip, when asked whether anyone else was in the house. Only after she was removed from the home did she claim no one else was in the home.

(Doc. #40, p. 20). The defendant also told Officer Sage that he owned a Glock pistol that was located in the house at the time of the encounter. *Id.* The court concludes that the combination of these factors created at least a reasonable suspicion in the minds of the officers that another person, potentially armed, could have been present in the residence. Thus, the protective sweep was justified and the defendant's objection is without merit.

    ii.    *Scope of the Protective Sweep*

The court also agrees with the magistrate judge that the scope of the protective search was limited to determining whether someone else was present in the home. The officers testified that the sweep lasted only two to three minutes, and they searched only in areas where a person could have

been hiding. The magistrate judge also found credible, based on a photograph, testimony that Officer Spangler found an assault rifle on the bed under a pile of clothing and blankets large enough to hide a person. Finally, the court found credible Officer Sage's testimony that he observed an open camera bag containing pipe bombs in plain view in the bedroom. The combination of these factors demonstrate that the search was reasonable in its scope, and the court finds the defendant's objection without merit.

  C.  Deficient Search Warrant

  The defendant objects to two findings in the magistrate judge's report and recommendation as it relates to the search warrant in this case: (1) the finding that the good faith exception applies to portions of the warrant unrelated to drug trafficking; and (2) the finding that the portion of the warrant authorizing the search for firearms met the constitutional particularity standard.

    i.  *Probable Cause and the Good Faith Exception*

  The magistrate judge concluded that the search warrant was deficient only as to the search for evidence of drug trafficking, and that the good faith exception applied to the remainder of the warrant. However, the defendant argues that evidence obtained through the execution of the search warrant should be suppressed because it was seized illegally after the defendant was arrested without probable cause. Following the defendant's logic, the good faith exception should not apply.

  The court agrees with the magistrate judge that no probable cause existed to search for evidence of marijuana ingestion or distribution. The government has admitted as much in their objection to the report and recommendation: "The Government agrees, however, that should any evidence be located on the computers that pertains to drug trafficking, the Magistrate Judge's recommendation that *that particular type of evidence* should be suppressed is appropriate under the circumstances." (Doc. #41, pg. 3) (emphasis in original). Accordingly, the magistrate judge's findings are affirmed in this regard.

  However, the magistrate judge went on to conclude that the deficiency in the drug trafficking portion of the warrant did not render the entire warrant defective. Under the Ninth Circuit severance doctrine, "[o]nly those articles seized pursuant to the invalid portions need be suppressed." *U.S. v.*

*Sears*, 411 F.3d 1124, 1129 (9th Cir. 2009). Here, the remainder of the warrant was saved by the good faith exception established in *United States v. Leon*, 468 U.S. 897, 925 (1984), which holds evidence seized in the search of a residence admissible if there is a colorable argument that the search warrant was supported by probable cause and if the officer's reliance on the warrant was objectively reasonable. *Id.*

The court again agrees with the magistrate judge's analysis. Having found that the initial encounter between the police and the defendant was an investigatory detention supported by reasonable suspicion, and that the protective sweep was constitutionally justified, these events armed the officers with sufficient probable cause to search for evidence of explosive devices, components used to manufacture explosive devices, and firearms. Accordingly, the defendant's objection is without merit.

        ii.      *Particularity Regarding Firearms*

The defendant's final objection to the report and recommendation concerns the specificity with which the warrant described the search for firearms in the residence. The defendant maintains that the "information contained in the affidavit did not set forth sufficient probable cause to seize 'any and all firearms' as described in the warrant." (Doc. #42, p. 12). Absent such information, the defendant alleges that the police did not have sufficient probable cause to believe that any firearms in the house were either contraband or evidence of a crime.

The magistrate judge concluded that the particularity requirement was satisfied because the officers did not have a physical description of the weapons at the time of issuing the warrant. (Doc. #40, p. 27). The court agrees with the magistrate judge's finding that the warrant in this case met the particularity requirement. Specifically, the only information officers had concerning the weapon used in the alleged shooting was that it made a "popping noise" similar to that of a BB or pellet gun. (Doc. #40, p. 26–27). BB and pellet guns can look like a number of other firearms. *See e.g., U.S. v. Franklin*, 161 F. Supp. 2d 1087 (N.D. Cal. 2001) (finding that a pellet gun looked like a revolver). Accordingly, the warrant was sufficiently particular under the circumstances, and the defendant's objection is without merit.

**James C. Mahan**
**U.S. District Judge**

1   **III.    Motion to Suppress Alleged *Miranda* Violations**

2   At the September 21, 2010, evidentiary hearing on the defendant's motion to suppress, the court ordered that defense counsel had until the close of business on September 22, 2010, to file a supplemental responsive brief regarding "Miranda issues." (Doc. #35). Government counsel would then be provided five days to prepare a response. The defendant in fact submitted a supplement to his motion to suppress on September 24, 2010 (doc. #38), two days after the scheduled deadline. The government filed a response. (Doc. #39). Although the defendant's filing was untimely, the court follows its preference in deciding motions on their merits and considers the parties's arguments below.

In the supplement to the motion to suppress, the defendant argues that once he was handcuffed and escorted back to the patrol vehicle, he was in custody, and all statements subsequently made to law enforcement personnel were the product of a custodial interrogation. The defendant urges the court to suppress those statements, as well as their fruits, as having been obtained without a valid warning and waiver of his rights as required by *Miranda v. Arizona*, 384 U.S. 436, 478 (1966).

A.    Factual Background[1]

On April 30, 2010, Officer Seth VanBeveren was dispatched to 2190 Polynesia Court in Henderson, Nevada around 6:00 a.m. A male, later identified as Ryan Deering, reported hearing popping noise from his neighbor's house and that something hit his roof. While VanBeveren was talking with Mr. Deering, Officer Jason Spangler arrived, and together they went to 75 Motu Court to make contact. They knocked on the door, and the defendant eventually responded but refused to show his hands. VanBeveren asked if Rodriguez would just come out on the porch and talk. The defendant stepped out, but he kept his left hand behind the door.

VanBeveren grabbed Rodriguez by the right wrist. As Rodriguez exited the house, he brought his

---

[1] Again, the court has adopted the factual summary recounted in the magistrate judge's report and recommendation. This section is not meant to supersede that summary, but is merely a brief recitation of the portions of the record relevant to the *Miranda* issues.

**James C. Mahan**
**U.S. District Judge**

- 10 -

1  left hand out from behind the door, and VanBeveren noticed that the defendant did not have anything
2  in his hands. VanBeveren released the defendant's wrist.

3  　　　While standing on the porch area, VanBeveren tried to question Rodriguez, and the defendant
4  put his hands in his pockets. VanBeveren asked him to remove his hands from his pockets for officer
5  safety reasons. Rodriguez attempted to put his hands in his pockets a second and a third time despite
6  VanBeveren's request that he not do so. VanBeveren then placed Rodriguez in handcuffs because
7  VanBeveren was concerned for officer safety and patted him down for weapons. No weapons were
8  found.

9  　　　VanBeveren then escorted Rodriguez to a patrol car parked in front of the house. Officer
10 Spangler went to the house to talk to Rodriguez's mother, Michelle McKenna. VanBeveren advised
11 Rodriguez that he was not under arrest, and Rodriguez stated that he understood. VanBeveren
12 admitted that although he told Rodriguez that he was not under arrest, Rodriguez was not free to
13 leave. VanBeveren stated that he did not read Rodriguez *Miranda* warnings before asking him
14 questions. VanBeveren asked Rodriguez who was shooting Mr. Deering's house with a BB gun.
15 Rodriguez said that he had been asleep and that it was his twin brother. After further questioning,
16 Rodriguez stated that he did not have a twin brother and that he was the one shooting at the
17 neighbor's house.

18 　　　Officer Sage arrived and came to where VanBeveren was questioning Rodriguez. Officer
19 Sage stayed with Rodriguez, awhile VanBeveren went back to the house. While Sage was with
20 Rodriguez at the patrol vehicle in handcuffs, Rodriguez stared into space and spoke without
21 prompting. Although he initially stated that he had been asleep when the shooting occurred, the
22 defendant continued on to state that he had a twin brother and also a best friend in the house along
23 with his Glock.

24 　　　B.　　The Requirement for *Miranda* Warnings

25 　　　*Miranda* warnings are necessary when a suspect in custody is interrogated by the police.
26 *Thompson v. Keohane*, 516 U.S. 99, 102 (1995). Custodial interrogation is questioning initiated by
27 law enforcement officers after a person has been taken into custody or deprived of his freedom. *U.S.*
28

*v. Butler*, 249 F.3d 1094, 1098 (9th Cir. 2001) (citing *Miranda v. Ariz.*, 384 U.S. 436, 444 (1966)). In determining whether a suspect was in custody, "the ultimate inquiry is simply whether there [was] a 'formal arrest or restraint on freedom of movement' of the degree associated with formal arrest." *Stansbury v. Cal.*, 511 U.S. 318, 322 (1994) (quoting *Cal. v. Beheler*, 463 U.S. 1121, 1125 (1983)).

The court has already concluded above that the events in question constituted an investigatory detention, rather than a formal arrest. Accordingly, the issue is whether the defendant, although not formally arrested, had his freedom of movement restrained to the degree associated with a formal arrest. If so, the court then considers whether the defendant was interrogated by the law enforcement personnel. Finally, the court considers whether the defendant's statements were voluntarily made.

      i.    *Custodial Interrogation*

The court determines whether a defendant is in custody for *Miranda* purposes by examining the objective circumstances of the interrogation. *Stansbury*, 511 U.S. at 323. Thus, the subjective view of either the suspect or the interrogating officer is not relevant to whether the defendant was in custody. *Id.*; *U.S. v. Leasure*, 122 F.3d 837, 840 (9th Cir. 1997). In *United States v. Butler*, the Ninth Circuit identified some of these objective circumstances, including: language used by the officers, the physical characteristics of the place where the questioning occurs, the degree of pressure applied to detain the individual, the duration of the detention, and the extent to which the person was confronted with evidence of guilt. 249 F.3d 1094, 1099 (9th Cir. 2001).

*Miranda* warnings are required once a person in custody is being interrogated by persons the suspect knows are acting on behalf of the state. In *Rhode Island v. Innis*, 446 U.S. 291 (1980), the Supreme Court defined interrogation as "express questioning or its functional equivalent." *Id*. at 300–01. In the Ninth Circuit, the issue of whether a defendant was subjected to interrogation is a mixed question of law and fact, which is reviewed by the circuit court of appeals *de novo*. *U.S. v. Morino-Flores*, 33 F.3d 1164, 1168 (9th Cir. 1994).

However, the Supreme Court and Courts of Appeals have repeatedly emphasized that many types of questions are not considered interrogation and do not require *Miranda* warnings. For example, questions asked of a motorist temporarily detained in a traffic stop do not require *Miranda*

James C. Mahan
U.S. District Judge

- 12 -

warnings. *Berkemer v. McCarty*, 468 U.S. 420, 439 (1984) (quoting *U.S. v. Brignoni-Ponce*, 422 U.S. 873, 881 (1975)). In *Berkemer*, the officer asked the suspect to perform a field sobriety test, and asked if he had been using intoxicants. The Supreme Court found *Miranda* warnings were not required, because an officer is permitted to ask a suspect "a moderate number of questions to determine his identity, and to obtain information confirming or dispelling the officer's suspicions" during a traffic stop. *Id.*

Similarly, general, on-the-scene questioning does not constitute interrogation for purposes of the Fifth Amendment and thus does not require *Miranda* warnings. *See e.g., U.S. v. LaGrone*, 43 F.3d 332, 335 (7th Cir. 1994) (finding no interrogation when police ask suspected drug dealer for permission to search store); *U.S. v. Klein*, 13 F.3d 1182, 1184 (8th Cir. 1994) (finding no interrogation when officer stopped defendant in hospital parking lot to ask about shooting victim defendant brought to hospital); *Vickers v. Stewart*, 144 F.3d 613, 616–17 (9th Cir. 1998) (finding no interrogation when prison guard pulled defendant from emergency scene of fire to ask what happened); *Garcia v. Singletary*, 13 F.3d 1487, 1491–92 (11th Cir. 1994) (finding no interrogation when officer asked prisoner why defendant started fire to determine fire's cause).

Applying these cases to the facts at bar, the court finds that no custodial interrogation occurred in this case, and, accordingly, there was no need to recite *Miranda* warnings. Although the defendant's liberty was in fact restrained, the questions asked by Officer VanBeveren were in line with those in *Berkemer* and the above-cited "on-the-scene questioning" cases. VanBeveren asked Rodriguez who was shooting Mr. Deering's house with a BB gun to ascertain the cause of the shooting and whether other people were present in the residence. This line of questioning was proper, in that the information elicited was meant to confirm of dispel the officer's suspicions.

Neither were the statements made to Officer Sage the product of custodial interrogation. Rather, Officer Sage testified at the evidentiary hearing the defendant spontaneously began talking about his twin brother, and that discussion led the defendant into admitting that he had a Glock in the residence. Accordingly, the issue becomes whether the statements made to the officers meet the voluntariness requirement.

**James C. Mahan**
**U.S. District Judge**

- 13 -

        ii.       *Voluntariness*

For a statement to be voluntary, it must be "one that is the product of a rational intellect and free will." *U.S. v. Kelley*, 953 F.2d 562, 564 (9th Cir. 1992) (citing *Blackburn v. Ala.*, 361 U.S. 199, 208 (1960)). In examining the voluntariness of a confession, the court must consider "whether, under the totality of the circumstances, the challenged confession was obtained in a manner compatible with the requirements of the Constitution." *Derrick v. Peterson*, 924 F.2d 813, 817 (9th Cir. 1991). In addition, the Supreme Court has determined that coercive police activity is a necessary predicate to a finding that a confession is not voluntary. *Colo. v. Connelly*, 479 U.S. 157, 167 (1986). It is the government's burden to prove that a confession was voluntary by a preponderance of the evidence. *U.S. v. Jenkins*, 958 F.2d 934, 937 (9th Cir. 1991) (citing *Lego v. Twomey*, 404 U.S. 477, 489 (1972))

The court must examine the totality of the circumstances and "determine whether 'the government obtained the statement by physical or psychological coercion or by improper inducement so that the suspect's will was overborne.'" *U.S. v. Harrison*, 34 F.3d 886, 890 (9th 1994) (quoting *U.S. v. Leon Guerrero*, 847 F.2d 1363, 1366 (9th Cir. 1988)). The court should consider the characteristics of the accused and the details of the interrogation. *Kelley*, 953 F.2d at 565 (citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973)). In *Kelley*, the court found that even though the defendant was going through heroin withdrawal, began experiencing chills, shaking and trembling, and told agents they needed to hurry if they wanted to continue the interrogation, Kelley was still able to think rationally. The personal characteristics of the accused are "constitutionally irrelevant absent proof of [police] coercion." *Derrick*, 924 F.2d at 818 (quoting *U.S. v. Rohrbach*, 813 F.2d 142, 144 (8th Cir. 1987) (citations omitted)).

Applying these cases to the facts at bar, the court finds that under the totality of the circumstances, the defendant voluntarily made the statements at issue. There is no evidence in the record of police coercion or improper inducement. Additionally, the defendant has not presented any personal characteristics bearing on the issue of coercion. Accordingly, the court finds that the statements made to the officers are admissible under the facts presented.

**James C. Mahan**
**U.S. District Judge**

UPON CONSIDERATION of the magistrate judge's report and recommendation (doc. #40), and the papers and pleadings on this matter,

IT IS ORDERED, ADJUDGED, AND DECREED that defendant's motion to suppress (doc. #20) be GRANTED in part and DENIED in part. The motion is hereby granted as it relates to seized evidence of drug trafficking and denied an all other respects.

IT IS FURTHER ORDERED that the magistrate judge's report and recommendation (doc. #40) is affirmed except as it relates to the seized Dell computers, which shall be admitted as evidence pertaining to the manufacture of explosive devices and weapons, but not as evidence regarding drug trafficking.

DATED January 18, 2011.

_____
UNITED STATES DISTRICT JUDGE

**James C. Mahan**
**U.S. District Judge**